[No. B087059. Second Dist., Div. Six. Nov. 14, 1995.]

MARY HAVLICEK et al., Plaintiffs and Appellants, v. COAST-TO-COAST ANALYTICAL SERVICES, INC., et al., Defendants and Respondents.

COUNSEL

McCutchen, Doyle, Brown & Enersen, Susan L. Hoffman, James G. Snell and Neil A. Rubin for Plaintiffs and Appellants.

Richards, Watson & Gershon, Timothy L. Neufield and Alison E. Maker for Defendants and Respondents.

OPINION

YEGAN, J.—Appellants Mary Havlicek and Stephen C. Havlicek, directors of respondent Coast-to-Coast Analytical Services, Inc. (CCAS), sought an

order from the superior court allowing them to inspect the books and records of CCAS. In addition, appellants unsuccessfully sought to enjoin a pending merger by CCAS until they had completed their inspection. Appellants contend they have an "absolute right" to review all CCAS documents and are not required to explain or justify their inspection demands. (Corp. Code, § 1602.)[1]

CCAS objected to the inspection on the theory that Delaware law applied because CCAS is a Delaware corporation. Pursuant to the Delaware statute, a director may review corporate documents only for "a purpose reasonably related to his position as a director[,]" and the Delaware Court of Chancery has exclusive jurisdiction to enforce inspection rights. (Del. Code Ann. tit. 8, § 220, subd. (d) (1995).) The trial court agreed with CCAS and denied appellants' request, stating that it lacked "jurisdiction" to order an inspection.

We conclude that the trial court erred in applying Delaware law and in refusing to grant appellants, at the very least, an "inspection with just and proper conditions." (§ 1603, subd. (a).)[2]

*Facts*

CCAS is a Delaware corporation. When appellants filed their request in the superior court, CCAS maintained its principal executive office in Camarillo, California. Appellants are two of the five directors of CCAS and control 40 percent of its stock. They reside in California. The three remaining directors of CCAS are employees of respondent ISS International Service System, Inc. (ISS), which owns 60 percent of CCAS stock.

Appellants allege that, on April 24, 1994, they were constructively terminated from their positions as officers and employees of CCAS. In early May,

---

[1] All statutory references are to the Corporations Code unless otherwise stated.

Section 1602 provides: "Every director shall have the absolute right at any reasonable time to inspect and copy all books, records and documents of every kind and to inspect the physical properties of the corporation of which such person is a director and also of its subsidiary corporations, domestic or foreign. Such inspection by a director may be made in person or by agent or attorney and the right of inspection includes the right to copy and make extracts. This section applies to a director of any foreign corporation having its principal executive office in this state or customarily holding meetings of its board in this state."

[2] Section 1603, subdivision (a) provides: "Upon refusal of a lawful demand for inspection, the superior court of the proper county, may enforce the right of inspection with just and proper conditions or may, for good case shown, appoint one or more competent inspectors or accountants to audit the books and records kept in this state and investigate the property, funds and affairs of any domestic corporation or any foreign corporation keeping records in this state and of any subsidiary corporation thereof, domestic or foreign, keeping records in this state and to report thereon in such manner as the court may direct."

CCAS announced plans to merge its assets with those of two other corporations to form Pace Incorporated. Appellants opposed the merger and demanded broad access to CCAS documents. Although CCAS allowed appellants to review certain documents, other documents were withheld because CCAS became suspicious that appellants would use them to establish a competing business.

A majority of the CCAS directors approved the merger on June 6, 1994. Appellants voted against it and continued, unsuccessfully, to demand access to company documents. They filed this action on July 27, 1994, five days before the merger was scheduled to close. At the hearing on July 28, the trial court denied relief. On August 1, 1994, we also denied appellants' petition for writ of mandate.

On August 3, 1994, CCAS merged with Pace. CCAS no longer maintains an office in California. Although it continues to exist as a corporation, its only assets are shares of stock in Pace. Pace, located in New York, now owns the documents appellants wish to inspect but CCAS has represented that they continue to exist and can be made available for inspection. The controversy is not over. Litigation between the parties is extant.

*The Relocation of CCAS's Principal Office and Removal of the Documents From California Does Not Render This Action Moot.*

■ CCAS argues this appeal is moot because CCAS has transferred its documents and assets to Pace and no longer maintains an executive office in California. An action becomes moot when " 'pending an appeal from the judgment of a lower court, and without any fault of the defendant, an event occurs which renders it impossible for this court, if it should decide the case in favor of plaintiff, to grant him any effectual relief whatever . . . .' " (*Finnie* v. *Town of Tiburon* (1988) 199 Cal.App.3d 1, 10 [244 Cal.Rptr. 581].)

The fact that CCAS has relocated and removed the documents from California is insufficient to render the action moot. Changed circumstances render a matter moot only when they occur " 'without any fault of the defendant . . . .' " (199 Cal.App.3d at p. 10.)

CCAS is, of course, responsible for closing the California office and its moving of the documents out of state. We need not decide whether section 1603, subdivision (a) limits the right of a director to inspect ". . . books and records kept in this state . . ." or whether the "in the state" aspect of the statute applies only to court-appointed inspectors or accountants. Where, as

here, the books and records are moved, section 1603 cannot be used as a shield to defeat inspection. This rule is but a variation of the equitable maxim, "[n]o one can take advantage of his own wrong." (Civ. Code, § 3517.) Moreover, an ". . . appeal reviews the correctness of the judgment or order as of the time of its rendition . . . ." (*Karrin* v. *Ocean-Air Mobile Home Estates* (1991) 1 Cal.App.4th 1066, 1070 [2 Cal.Rptr.2d 581]; see also *In re Elise K.* (1982) 33 Cal.3d 138, 149 [187 Cal.Rptr. 483, 654 P.2d 253].)

*Choice of Law*

■ Appellants insist that California law governs the inspection issue. CCAS argues that Delaware law applies because CCAS is a Delaware corporation. ■ To determine the correct choice of law, we apply a three-step analysis. First, we determine whether the two concerned states have different laws. Second, we consider whether each state has an interest in having its law applied to this case. Finally, if the laws are different and each state has an interest in having its own law applied, we apply the law of the state whose "interests would be more impaired if its policy were subordinated to the policy of the other state." (*North American Asbestos Corp.* v. *Superior Court* (1986) 180 Cal.App.3d 902, 905 [225 Cal.Rptr. 877]. See also *Bernhard* v. *Harrah's Club* (1976) 16 Cal.3d 313, 320 [128 Cal.Rptr. 215, 546 P.2d 719].)

■ The California statute provides: "Every director [has] the absolute right at any reasonable time to inspect and copy all books, records and documents of every kind . . . ." (§ 1602.) Under the analogous Delaware statute, a director has "the right to examine the corporation's . . . books and records for a purpose reasonably related to his position as a director." (Del. Code Ann. tit. 8, § 220, subd. (d) (1995).) In addition, the Delaware statute grants its Court of Chancery exclusive jurisdiction to resolve disputes concerning inspections by corporate directors. (*Ibid.*)

If Delaware law applies, the Delaware Court of Chancery has exclusive jurisdiction and appellants must prove that they have a proper purpose for their request. The California statutory scheme does not impose a "proper purpose" requirement (*Valtz* v. *Penta Investment Corp.* (1983) 139 Cal.App.3d 803, 810 [188 Cal.Rptr. 922]), and appellants have never articulated the purpose for their inspection demand. Thus, while the California

statutory scheme would grant appellants an inspection, the same would not necessarily be true under the more restrictive Delaware statute.[3]

The directors of a corporation owe a fiduciary duty to the corporation and its shareholders. (*Hartman* v. *Hollingsworth* (1967) 255 Cal.App.2d 579, 581-582 [63 Cal.Rptr. 563].) Section 1602 represents a legislative judgment that directors are better able to discharge those duties if they have free access to information concerning the corporation. Thus, California has a public policy favoring broad inspection rights for the directors. The Legislature has also declared that it is the public policy of California to apply the same standards to foreign corporations whose principal executive offices are located in California. We may not ignore that declaration of public policy. (*California Casualty Indemnity Exchange* v. *Pettis* (1987) 193 Cal.App.3d 1597, 1605 [239 Cal.Rptr. 205].)

Delaware also has important interests at stake. Because CCAS is a creation of Delaware law, Delaware has an interest in prescribing the powers of CCAS, imposing uniform regulations on its internal affairs, and controlling its rights and liabilities. (*Riley* v. *Fitzgerald* (1986) 178 Cal.App.3d 871, 877 [223 Cal.Rptr. 889].) The Delaware statute expresses a public policy which attempts to protect corporations against unreasonable or burdensome inspections by directors.

We must decide which state's interests would be more impaired if its policy were subordinated to the policy of the other state. (*Offshore Rental Co.* v. *Continental Oil Co.* (1978) 22 Cal.3d 157, 166 [148 Cal.Rptr. 867, 583 P.2d 721].) Delaware's interest in regulating the activities of its domestic corporations is less substantial where, as here, its only contact with the corporation is in issuing a certificate of incorporation. CCAS has no Delaware shareholders or directors. It does not have an office or store its documents in Delaware. The record does not reflect whether CCAS ever conducted business in Delaware. By contrast, California has strong contacts with CCAS. CCAS maintained its principal office and most of the documents at issue in this state until the merger occurred. CCAS also conducted business in California and employed California residents. Forty percent of its stock and two of the five seats on its board of directors are controlled by California residents.

---

[3] Appellants place great reliance on *Valtz* v. *Penta Investment Corp., supra*, 139 Cal.App.3d 803. There, owners of over 5 percent of the shares sought to enforce their "absolute right" to inspect and copy the shareholders list. The corporation refused, alleging that the information would be used in a competing business. (*Id.*, at p. 806.) The opinion does observe that the "unclean hands" defense was tantamount to the "proper purpose" rule and therefore inapplicable. (*Id.*, at p. 810.) The opinion, however, is silent with respect to section 1603 subdivision (a) and its provision for a protective order.

California's interests would be impaired by the application of Delaware law because Delaware cannot at the same time honor a director's "absolute" inspection right and limit inspections to a "purpose reasonably related to his position as a director." However, as we shall explain, the trial court can protect Delaware's interest in avoiding a burdensome inspection by imposing reasonable conditions. We conclude, therefore, that California's interest would be more impaired by the application of Delaware law than Delaware's interest would be impaired by the opposite result. California law applies to the inspection issue.[4]

*Section 2115 Does Not Render Section 1602 Inapplicable.*

CCAS argues that it need not comply with section 1602 because it does not meet the test provided in section 2115 for the application of California law to a foreign corporation. Section 2115 provides that portions of the Corporations Code, including section 1602, apply to a foreign corporation if, among other things, "more than one-half of its outstanding voting securities are held of record by persons having addresses in this state." (§ 2115, subd. (a).) ISS owns 60 percent of the CCAS voting securities and does not have an address in California.

CCAS fails the test under section 2115, but that does not settle the question because section 1602 contains a separate and distinct test; i.e., a "long arm" provision. The statute provides that it "applies to a director of any foreign corporation having its principal executive office in this state . . . ." (§ 1602.) CCAS meets this test but argues that section 1602 applies only where the corporation also meets the test established in section 2115.

Section 1602 was amended to apply to foreign corporations after section 2115 was enacted. We assume that the Legislature was aware of section 2115 when it amended section 1602 and that it intended to maintain a consistent body of statutes. (*Schmidt* v. *Southern Cal. Rapid Transit Dist.* (1993) 14 Cal.App.4th 23, 27 [17 Cal.Rptr.2d 340].) We must also avoid an interpretation of section 2115 which requires that section 1602 be ignored unless " 'the two acts are so inconsistent that there is no possibility of concurrent operation . . . .' " (*Hays* v. *Wood* (1979) 25 Cal.3d 772, 784 [160 Cal.Rptr. 102, 603 P.2d 19].)

---

[4]Our construction of section 1603, subdivision (a) (see *post*, at pp. 1855-1856) does not render the conflict of laws issue moot. The California and Delaware rules for director inspection remain different.

Were we to rule that Delaware law applied to this inspection controversy, a director's right to inspect would not only be chilled, it might be frozen. Whether appellants would suffer the burden of litigating the inspection issue in the Delaware chancery court is unknown.

Here, although the two sections contain different tests, they are capable of concurrent operation. Each section may be given effect because each establishes a separate and distinct test for determining whether a foreign corporation must comply with section 1602. CCAS met one such test and is therefore required to comply with section 1602, regardless of whether it also meets the other available test.

### The Internal Affairs Doctrine Does Not Require Application of Delaware Law.

■  CCAS argues that Delaware law must be applied because the appellants' claim involves the internal affairs of a Delaware corporation, a matter traditionally controlled by the state of incorporation. (*Valtz* v. *Penta Investment Corp., supra*, 139 Cal.App.3d at p. 807.) "The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs . . . because otherwise a corporation could be faced with conflicting demands." (*Edgar* v. *MITE Corp.* (1988) 457 U.S. 624, 645 [73 L.Ed.2d 269, 285, 102 S.Ct. 2629].) Here, complying with California law will not require CCAS to violate Delaware law. The Delaware statute allows, but does not require, that a corporation restrict the inspection rights of its directors. CCAS will not violate Delaware law by granting appellants greater access to its documents. The internal affairs doctrine does not apply.

### Section 1602 Does Not Violate the Commerce Clause.

■ CCAS also argues that application of California law in this case would violate the commerce clause of the United States Constitution. (U.S. Const., art. I, § 8, cl. 3.) We disagree. The commerce clause prohibits states from discriminating against interstate commerce. (*Fort Gratiot Sanitary Landfill, Inc.* v. *Michigan Dept. of Natural Resources* (1992) 504 U.S. 353 [119 L.Ed.2d 139, 147, 112 S.Ct. 2019].) It also "precludes the application of a state statute to commerce that takes place wholly outside of the State's borders . . . ," (*Edgar* v. *MITE Corp., supra*, 457 U.S. at pp. 642-643 [73 L.Ed.2d at p. 283]) and invalidates regulations that "adversely . . . affect interstate commerce by subjecting activities to inconsistent regulations." (*CTS Corp.* v. *Dynamics Corp. of America* (1987) 481 U.S. 69, 88 [95 L.Ed.2d 67, 84, 107 S.Ct. 1637].)

Section 1602 does not suffer from these defects. It does not discriminate against foreign corporations because it imposes on those corporations the same burdens imposed upon domestic corporations. It does not apply to

activities occurring wholly outside the borders of California because, until the merger, most CCAS documents were located in California. The same would probably be true for any foreign corporation maintaining its principal office in this state. Finally, section 1602 does not subject CCAS to conflicting regulatory demands. Application of section 1602 to CCAS does not, therefore, violate the commerce clause.

*Section 1602 Does Not Violate the Full Faith and Credit Clause.*

■ Similarly, section 1602 does not violate the full faith and credit clause. (U.S. Const., art. IV, § 1 ["Full Faith and Credit . . . be given in each State to the public Acts, Records and Judicial Proceedings of every other State . . . ."].) A state's choice of law decision does not violate the full faith and credit clause if the state has significant contacts with the dispute " 'such that choice of its law is neither arbitrary nor fundamentally unfair.' " (*Wilson* v. *Louisiana-Pacific Resources, Inc.* (1982) 138 Cal.App.3d 216, 222-223 [187 Cal.Rptr. 852].) For purposes of the full faith and credit clause, the location of a corporation's principal executive office within a state is a "significant contact." (*Valtz* v. *Penta Investment Corp.*, *supra*, 139 Cal.App.3d at p. 807.)

CCAS located its principal executive office in this state and has more substantial contacts with California than it does with Delaware. Accordingly, the choice of California law as opposed to Delaware law is neither arbitrary nor fundamentally unfair. Application of section 1602 does not violate the full faith and credit clause.

*The Trial Court May Impose Limitations on Appellants' Inspection Rights Under Sections 1602 and 1603.*

■ The trial court must apply California law but is not obligated to grant appellants unfettered access to every document ever created by CCAS. Instead, the trial court may impose "just and proper conditions" upon appellant's otherwise "absolute" inspection rights. We admit that the Legislature's choice of the word, "absolute," in section 1602 does give us pause. But one hypothetical illustrates that "absolute" cannot mean "absolute." A disgruntled director unambiguously announces his or her intention to violate his or her fiduciary duties to the corporation and the shareholders by using inspection rights to learn trade secrets, gain access to confidential customer lists, and compete with the corporation. In this situation, does the Legislature

want the judiciary to come to the aid of the disgruntled director, enforce the "absolute right" to inspect and help the director commit a tort against the corporation? No.[5] " ' "The literal meaning of the words of a statute may be disregarded to avoid absurd results . . . ." ' [Citation.]" (*Unzueta* v. *Ocean View School Dist.* (1992) 6 Cal.App.4th 1689, 1698 [8 Cal.Rptr.2d 614].)

The "absolute right" to inspect documents is the general rule in California. However, section 1602 must be read in pari materia with section 1603. (*Unzueta* v. *Ocean View School Dist., supra*, 6 Cal.App.4th at p. 1695.) The language of section 1603, subdivision (a) is expansive. It is not expressly limited to an inspection request by a shareholder. Being a remedial statute, it must be liberally construed. (*Ford Dealers Assn.* v. *Department of Motor Vehicles* (1982) 32 Cal.3d 347, 356 [185 Cal.Rptr. 453, 650 P.2d 328].) Where the corporation determines that an unfettered inspection will result in a tort against the corporation, it may decline the request for inspection. In this situation, ". . . directors can enforce their inspection rights by court action. . . . [§ 1603]." (Friedman, Cal. Practice Guide: Corporations 2 (The Rutter Group 1995) ¶ 6:502, pp. 6-98; see also 15 Cal.Jur.3d, Corporations, § 263, p. 367 )

Upon a director's request for inspection pursuant to section 1603 in the superior court, the corporation must demonstrate, by evidentiary showing, that a protective order is necessary to prevent a tort against the corporation. Whether there are other situations where a director's inspection rights may be curtailed is not before us and we offer no opinion thereon. The superior court may then exercise its broad discretion under section 1603, subdivision (a) to fashion a protective order imposing just and proper conditions on the inspection. Precisely what "just and proper conditions" are necessary in this case, if any, is a question we leave to the superior court.

## Conclusion

The trial court erred in applying Delaware law and denying appellants any inspection rights. We reverse and remand the matter to allow the trial court

---

[5]We also note the recent case of *Chantiles* v. *Lake Forrest II Master Homeowners Assn.* (1995) 37 Cal.App.4th 914 [45 Cal.Rptr.2d 1]. There, an analogous provision in section 8334, provided for an "absolute right" of inspection for a homeowners association director. Notwithstanding the use of the word "absolute," a majority of the court were of the opinion that the right to privacy could, and there did, outweigh the "absolute" right of inspection. (37 Cal.App.4th at pp. 925-926.)

to enter an order granting appellants an appropriate inspection. Each party shall bear its own costs.

Stone (S. J.), P. J., and Gilbert, J., concurred.