[No. D055034. Fourth Dist., Div. One. June 17, 2010.]

WALTER E. WOLF, Plaintiff and Appellant, v.
CDS DEVCO et al., Defendants and Respondents.

## COUNSEL

Bullivant Houser Bailey, Daniel T. Rockey, Arlena Carrozzi and Micah R. Jacobs for Plaintiff and Appellant.

Allen Matkins Leck Gamble Mallory & Natsis, Valentine S. Hoy; Luce, Forward, Hamilton & Scripps and Charles A. Bird for Defendants and Respondents.

## OPINION

**HUFFMAN, Acting P. J.**—Plaintiff and appellant Walter E. Wolf, who formerly served as a corporate director of San Elijo Ranch, Inc. (SERI), brought this action against SERI and related parties, to seek enforcement of the "absolute" rights of a director to inspect SERI's corporate records. (Corp. Code,[1] § 1602.) Wolf is also a 20 percent shareholder of CDS Devco (Devco;

---

[1] All further statutory references are to the Corporations Code unless noted. Section 1602 in relevant part provides: "Every director shall have the absolute right at any reasonable time to inspect and copy all books, records and documents of every kind and to inspect the physical

a Cal. real estate development corporation), which is the parent corporation of SERI. Wolf does not own shares in SERI itself.

Although Wolf was not reelected to the SERI board of directors, in his first amended petition for writ of mandate (the FAP), he continues to assert the rights of a director as against three defendants and respondents: (1) SERI; (2) HomeFed Corporation, the parent corporation of Devco, owning 80 percent of its shares; and (3) Paul J. Borden, who is the president of both Devco and SERI, as well as an officer of HomeFed Corporation (sometimes collectively defendants). (Code Civ. Proc., § 1085.)[2]

In his FAP, Wolf alleges that he has a right, and SERI and its controlling shareholders and officers, HomeFed Corporation and Borden, have a mandatory duty to allow him, to pursue a complete inspection of SERI financial records. He had continually been requesting such documents for a period of almost a year, before he received notification he would not be nominated for reelection to the SERI board. Wolf contends that his removal from the SERI board was unlawful, and such removal should not affect his inspection rights or deprive him of standing to pursue this action as a former director.

In opposition to the petition, defendants filed demurrers, pointing out that Wolf's petition admits he is no longer a director of SERI. Based on fairly recent case law, defendants argue this statutory scheme does not permit a person who is not currently serving as a director any further entitlement to inspect its records. (§§ 1602, 1603; *Chantiles v. Lake Forest II Master Homeowners Assn.* (1995) 37 Cal.App.4th 914 [45 Cal.Rptr.2d 1] (*Chantiles*).) Defendants also argued that Wolf had not pled any sufficient basis for a judicial extension of the statutory scheme, or any other qualified equitable right to inspect SERI records for any valid purpose, in the capacity of a director or former director.

The superior court ruled that the demurrers must be sustained without leave to amend, because Wolf had no statutory standing as a director to pursue his demands for inspection of SERI records, nor had he presented any sufficient basis to create any exceptions to the rule. Wolf appeals, contending the trial court erred and abused its discretion when it sustained the demurrers without leave to amend, because he sufficiently pled his entitlement to an exception to the standing requirements of section 1602. Wolf claims that he

properties of the corporation of which such person is a director and also of its subsidiary corporations, domestic or foreign."

[2] Originally, Wolf also sought relief in mandamus in another respect, as a 20 percent shareholder of Devco, but he has dismissed those shareholder claims from this action. A judicial notice request has been brought by defendants regarding another such related shareholder action, as we will discuss in part IIB., *post.*

was unlawfully removed as a director, such that his rights to sue in that capacity, to protect minority shareholders' or his own interests, had become fixed at the time he filed the original complaint (one day before the annual meeting at which he was not reelected).

The issues before us are narrow, and we decide only that Wolf's statutory arguments of ongoing entitlement to inspect corporate records in a director's capacity are without merit. (§ 1602.) He lacks the required status and standing to assert inspection rights that are properly due to a corporate director. Nor can he allege any realistic possibility of amendment, on a nonstatutory or equitable basis, to allege successfully on these facts that he is entitled to such continued director's inspection rights.

Other forms of action exist in which a corporation's rights may be enforced and its injuries redressed, if the corporate board will not take appropriate action. (See, e.g., *Grosset v. Wenaas* (2008) 42 Cal.4th 1100, 1108 [72 Cal.Rptr.3d 129, 175 P.3d 1184] [shareholder derivative suit].) Here, however, the trial court's analysis of the relevant legal and policy considerations, as applied to the pleaded facts, was correct as a matter of law. We affirm the judgment of dismissal.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Petition and Demurrer

For purposes of analyzing the demurrer ruling, we take the facts properly pleaded to assess whether they may state a cause of action as a matter of law. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) Originally, Wolf brought not only a complaint but also two petitions for relief in mandamus in his capacity as a director of SERI who was entitled to inspection of corporate records, and also as a 20 percent shareholder of Devco, who was entitled to shareholder rights. Pursuant to the parties' stipulation, the FAP amended and consolidated all prior pleadings in the action and effectively became the operative pleading in the action, superseding the complaint filed on September 9, 2008, and the two petitions filed on October 17, 2008. The parties further agreed that the FAP, as the operative pleading, would relate back to the date the initial complaint was filed on September 9, 2008.

In the FAP, Wolf pleads as general background that SERI is governed by a board of directors, four of whom are nominated by majority shareholder Devco (85 percent owner). (Art. III, §§ 2–4.) The other director is nominated by the minority shareholders (15 percent owner), and elections are held at annual meetings or by written consent. Wolf was nominated to the SERI

board by Devco and was elected for 13 terms of one year. During his latter term, he began to believe that corporate mismanagement had occurred between SERI and its parent corporations, and that his efforts to investigate them were being met with resistance by SERI and the parent corporations, Devco and HomeFed Corporation.

Beginning in October 2007, Wolf began to make document requests to SERI, Devco, and HomeFed Corporation. The various responses he received from SERI, Devco and Borden were in the nature of summaries that he considered to be inadequate. The parties also disagreed over the terms of a nondisclosure agreement that SERI was requesting. After about eight months, some records were provided but not enough to satisfy Wolf.

In August 2008, SERI management sent Wolf a written consent action form to call the annual meeting for September 10, 2008, listing Wolf as a candidate for director. Wolf signed and returned it. Unfortunately, Wolf also inadvertently transmitted to defendant Borden a copy of a draft complaint that Wolf was preparing in order to compel SERI, Devco and others to provide more complete responses to the October 2007 request for information.

Upon receiving the draft complaint, Borden inquired what was going on, and in a letter dated September 5, 2008, he advised Wolf that SERI and Devco management had decided to replace him on the SERI board of directors, and would not be renominating him for election at the September 10 meeting.

Wolf filed his original pleading on September 9, 2008, alleging, among other things, that he had been removed because of his disclosure requests, and that mandamus should issue to allow him, as a director of SERI, to assert his ongoing inspection rights.[3] Wolf sought a temporary restraining order (TRO) to postpone the annual meeting, once he learned he would not be renominated. At that hearing, Judge Steven Denton discussed Wolf's theory that the filing of his complaint served to fix his rights as of that time. The TRO was denied and the FAP was filed. (The record is unclear whether and when Wolf has been replaced as a director.)

In defendants' demurrer, they chiefly argued the pleading was defective on its face, because a statutorily required element to establish standing to bring an inspection petition was lacking, in that Wolf admitted he was no longer a director, and he therefore had no current duties to perform in that capacity. (§§ 1602, 1603.) Defendants also argued that the only proper respondent was

---

[3] Section 1603, subdivision (a) in relevant part provides: "Upon refusal of a lawful demand for inspection, the superior court of the proper county, may enforce the right of inspection with just and proper conditions . . . ."

the corporation whose conduct was sought to be compelled, SERI, so that HomeFed Corporation and Borden should be dismissed for lack of binding allegations against them.

Opposition and reply papers were filed, disputing whether adequate facts were pled and proper parties named.

## B. Ruling

After oral argument on December 19, 2008, the trial court sustained the demurrer without leave to amend on all of the allegations concerning a director's right to inspect SERI records. The court first took judicial notice, as requested by Wolf, of the reporter's transcript of the TRO request by Wolf to postpone the annual meeting, at which he was not being renominated to serve as a director. (Evid. Code, § 452.) The court also granted the request by SERI et al. to take judicial notice of Wolf's verification in support of his original petition, which had originally been set for a November 14 hearing. That scheduled hearing apparently went off calendar when Wolf filed his FAP on November 10, 2008. The parties stipulated that the FAP was the operative pleading.[4]

On the merits, the court expressed its view that the case presents a close call: "However, the court believes the better interpretation of Corp. Code section 1602 is that it required that petitioner plead and prove that he is a current director, both at the time the action is commenced and at the time of the activities proposed to be the subject of a writ of mandamus. Because it is undisputed that Wolf is no longer a director of SERI (Am. Pet. at paragraph 2), the demurrer must be sustained without leave to amend. And, because Wolf has no standing to demand inspection from SERI, it is appropriate to sustain the demurrer as to all defendants . . . ."

In explaining its reasoning that a "bright line" rule of entitlement to inspection rights should be adhered to, the superior court set forth these observations: "First, directors on both sides of similar disputes will know exactly where they stand. Far from 'clogging the courts' as supposed by petitioner [citation], this rule will insure that controversies over inspection rights are brought to the tribunal in a timely fashion. The court notes there was a delay of a year in this case, and the deferral has not been beneficial to either party . . . ."

---

[4] It must be emphasized that the subject ruling did not sustain the demurrers without leave to amend as to Wolf's shareholder petition with respect to Devco, but as noted, Wolf has voluntarily dismissed that portion of his claims in order to obtain this immediate appellate review of his inspection theory as a SERI director.

The superior court then explained its view that the issue of standing is critical in assessing a director's statutory request to review corporate records. The court declined "to defer the standing issue while the parties litigate over whether Wolf was improperly denied re-election to the SERI board. [Citation.] This strikes the court as putting the cart before the horse. If, as respondents assert, it turns out that there was no impropriety in the decision not to re-elect Wolf, it will be clear he has no inspection rights—but in the meanwhile, both parties will be put to substantial time, energy, effort and expense. Given that it is petitioner's obligation to establish standing [(*Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 232–233 [46 Cal.Rptr.3d 57, 138 P.3d 207]; *Connerly v. Schwarzenegger* (2007) 146 Cal.App.4th 739, 749 [53 Cal.Rptr.3d 203])], the court believes it is appropriate to address this threshold issue at the outset of the case."

Further, the superior court found unpersuasive Wolf's contention that in view of the denial of his ex parte application to postpone the September meeting and election, Wolf's rights as a director were fixed or conclusively established, simply because he had filed suit before the board election. That TRO ruling was not binding or dispositive.

The superior court also declined to follow, on these facts, an out-of-state rule "allowing inspection rights to a former director where the director faces personal liability." (See *State of Tennessee ex rel. Oliver v. Society for Preservation of the Book of Common Prayer* (Tenn. 1985) 693 S.W.2d 340, 343 (*Oliver*); *Cohen v. Cocoline Products, Inc.* (1955) 309 N.Y. 119, 124 [127 N.E.2d 906, 908] [former director retains right to inspect records related to the period of service as a director, where access to the records is necessary to protect the director or shareholders].) Rather, the FAP contained no meaningful allegations to support Wolf's contentions that he, as a former director, faced serious threats of personal liability exposure from his activities while a director, and instead, "[t]he court holds that a theoretical, inchoate exposure to personal liability is simply not enough."

Accordingly, the demurrers were sustained without leave to amend and the court dismissed the action as to all defendants. Wolf timely filed his notice of appeal.

Along with the respondents' brief, defendants have filed a request for judicial notice of a different first amended complaint filed by Wolf against them, including some claims as a Devco shareholder. (Evid. Code, §§ 452, 459.) That request has been deferred to this merits panel.

## DISCUSSION

### I

### *INTRODUCTION AND STANDARD OF REVIEW*

■ Mandamus is available in proper circumstances to compel the performance of duties of nongovernmental bodies or officers, such as a "corporation, board, or person," or to compel performance of a duty resulting from "an office, trust, or station," or to compel admission of a party to "the use and enjoyment of a right or office to which the party is entitled." (Code Civ. Proc., § 1085, subd. (a); see *Most v. First Nat. Bank of San Diego* (1966) 246 Cal.App.2d 425 [54 Cal.Rptr. 669] [corporation may be ordered to allow stockholder to inspect corporate books]; 8 Witkin, Cal. Procedure (5th ed. 2008) Extraordinary Writs, § 96, pp. 991–992.) Mandamus may be issued to require an appropriate exercise of discretion "under a proper interpretation of the applicable law." (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 442 [261 Cal.Rptr. 574, 777 P.2d 610] (*Common Cause*).)

Wolf contends that since he filed his original pleading the day before his term as a director ended, he is entitled to mandamus to allow him inspection of corporate records, in the nature of "use and enjoyment of a right or office" to which he remains entitled. He places himself in the role of a fiduciary director who suspects corporate mismanagement and has an absolute right to inspect records, to protect the interests of minority shareholders or to protect himself from personal liability. He contends such rights were effectively denied when these corporations stalled in allowing him full inspection, until he was no longer a director.

To address these arguments, we set forth basic rules for review and statutory standards for evaluating such petitions, and apply them to these allegations. "A demurrer tests the legal sufficiency of the complaint. [Citation.] Therefore, we review the complaint de novo to determine whether it contains sufficient facts to state a cause of action. [Citation.] 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.' [Citation.] The trial court exercises its discretion in declining to grant leave to amend. [Citation.] If it is reasonably possible the pleading can be cured by amendment, the trial court abuses its discretion by not granting leave to amend. [Citation.] The plaintiff has the burden of proving the possibility of cure by amendment. [Citation.]" (*Grinzi v. San Diego Hospice Corp.* (2004) 120 Cal.App.4th 72, 78 [14 Cal.Rptr.3d 893] (*Grinzi*); see *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317].)

■ In ruling on this demurrer, the superior court was required to apply statutory standards to the pleaded facts. Determining the meaning of a statutory standard requires the resolution of a question of law. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956].) "The soundness of the resolution of such a question is examined de novo." (*Ibid.*) Remedial statutes such as section 1602 are liberally construed. (*Havlicek v. Coast-to-Coast Analytical Services, Inc.* (1995) 39 Cal.App.4th 1844, 1856 [46 Cal.Rptr.2d 696] (*Havlicek*).)

In *Saline v. Superior Court* (2002) 100 Cal.App.4th 909, 913 [122 Cal.Rptr.2d 813], the court interpreted section 1602 et seq. in the context of asserted free speech protections. The court treated the scope of a corporate director's right to inspect corporate documents as a pure question of law that would be reviewed on a de novo basis, and we will do likewise.

## II

### *EXTENT OF ISSUES PRESENTED*

#### A. Identity of Defendants; Reinstatement Issues

Before turning to the pleading questions regarding the scope of protections afforded to Wolf under this statutory scheme, we first limit the issues that are actually presented for decision. Although the FAP makes generalized allegations against defendants other than SERI (i.e., parent corporation HomeFed Corporation and corporate official Borden; nothing is now claimed directly against Devco), the gist of the inspection right asserted only pertains to SERI itself, of which Wolf was formerly a director. Under Code of Civil Procedure section 1085, subdivision (a), both corporations and persons can be compelled to perform their official duties, but Wolf has made no specific arguments on appeal about the special role of HomeFed Corporation or Borden, beyond allegations of duties owed to him by SERI. Apparently, his only remaining theory is that SERI wrongfully denied him statutory or equitable director's inspection rights, and we need not further consider any potential liability of those other two defendants and respondents. Any arguments about them have been waived on appeal.

Further, Wolf did not expressly argue until he filed his reply brief that the relief he sought might include a request for reinstatement to the SERI board of directors. In his opening brief, he only generally argued that he is somehow still entitled to director status, because he was "unlawfully" removed. However, the body and the prayer of the FAP only sought enforcement of SERI corporate obligations to provide him, as a director, with

inspection opportunities, regardless of his current official status, on the theory that the filing date of his complaint predated the annual meeting and election that did not retain him.

■ Generally, we need not address arguments made for the first time in a reply brief (such as his reinstatement). (*Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 894–895, fn. 10 [93 Cal.Rptr.2d 364].) Normally, a party is not permitted " 'to change [his] position and adopt a new and different theory on appeal' because doing so would be unfair both to the court and to the opposing litigant. [Citation.]" (*Grinzi, supra*, 120 Cal.App.4th 72, 85.) The reinstatement request is such an unexpected change of position and need not be considered here.

No different result is required even if we look at appellant's new reinstatement theory in light of the rule that, in considering an appeal from a dismissal after the sustaining of a demurrer without leave to amend, an appellate court will examine whether the allegations state a cause of action under any possible legal theory. (*Grinzi, supra*, 120 Cal.App.4th 72, 85 ["Under these circumstances, new theories may be advanced for the first time on appeal."].) The gravamen of the FAP is found in the allegations of statutory and equitable director's inspection rights, and not in any alleged right to official, ongoing director status (except as it might affect such inspection rights). We find no justification for expanding the issues beyond those actually pled in the mandamus request.

## B. Judicial Notice

As the merits panel, we are next obligated to address the deferred request by defendants that we take judicial notice of an unconformed copy of a different first amended complaint filed by Wolf, seeking alternative relief against the same set of corporate defendants here, in the nature of a shareholder derivative action pursued in Wolf's capacity as a 20 percent shareholder of Devco stock. (*Wolf v. Borden* (Super. Ct. San Diego County, 2009, No. 37-2009-00093090-CU-BC-CTL).) Those claims evidently include both contract and tort theories, such as breach of fiduciary duty, to seek damages and declaratory relief. It is not clear from the submission whether discovery has been pursued regarding any shareholder requests to seek Devco corporate records, similar to the director's request here regarding SERI.

■ Judicial notice is proper under Evidence Code section 452, subdivision (d)(2), of the records of "any court of record of the United States or of any state of the United States." However, such a court record would normally show a conformed file stamp or other evidence of reliability. (*Ross v. Creel Printing & Publishing Co.* (2002) 100 Cal.App.4th 736, 743 [122 Cal.Rptr.2d 787] (*Ross*).)

" '[W]hen a party desires the appellate court to take judicial notice of a document or record on file in the court below the parties should furnish the appellate court with a copy of such document or record certified by its custodian.' [Citations.]" (*Ross, supra,* 100 Cal.App.4th 736, 743.) "It is the burden of the party seeking judicial notice to demonstrate a reason for the failure to furnish certified copies." (*Ibid.*) Even though no opposition was filed to this judicial notice request, we decline the request because the document offered is not in proper form.

Even if the document were properly authenticated, we would take judicial notice only as to the existence of the pleading, not as to the truth of any of the allegations contained in it. (*Ross, supra,* 100 Cal.App.4th 736, 743; *Day v. Sharp* (1975) 50 Cal.App.3d 904, 914 [123 Cal.Rptr. 918].) The fact that Wolf has apparently filed an alternative complaint against the same defendants does not assist us in our legal analysis of whether he can continue to pursue a director's inspection rights, by statute or authorized extension of those rights. (§ 1602.) The judicial notice request is denied.

## III

### STATUTORY SCHEME

#### A. Purpose of Inspection Rights; Standing Issues

Wolf bases his claim of a lawful demand for inspection on several factors, including his status as a director when the request was made and the lawsuit filed, and his argument that he was unlawfully removed. In addition, he argues that he may be exposed to personal liability for his own or other directors' activities that occurred before he left the board, such that he should be able to investigate on his own behalf, or on behalf of minority shareholders of SERI.

We begin with the normal rules of statutory interpretation, to ascertain the policies promoted by section 1602 and the criteria for pleading entitlement to relief under it. "First, we look to the words of the statute giving ' "effect to the usual, ordinary import of the language, at the same time not rendering any language mere surplusage." ' [Citation.] We must give the statute ' " "a reasonable and commonsense interpretation consistent with the apparent purpose and intention of the Legislature, practical rather than technical in nature, and which, when applied, will result in wise policy rather than mischief or absurdity. [Citations.]' " ' [Citation.] 'If the language of a statute is clear, we should not add to or alter it to accomplish a purpose which does not appear on the face of the statute or from its legislative history.' [Citation.]" (*Grinzi, supra,* 120 Cal.App.4th 72, 85.)

■ Section 1602 grants to "[e]very director" an "absolute" right (albeit subject to appropriate legal qualifications), to inspect and copy corporate records and documents. (See *Havlicek, supra,* 39 Cal.App.4th 1844, 1855–1856; *Tritek Telecom, Inc. v. Superior Court* (2009) 169 Cal.App.4th 1385, 1390–1391 [87 Cal.Rptr.3d 455] (*Tritek*) ["absolute" right is historically subject to exceptions].) This inspection right is subject to enforcement under section 1603, subdivision (a), which allows the superior court, "[u]pon refusal of a lawful demand for inspection," to enforce the right of inspection under "just and proper conditions."

■ In *Tritek, supra,* 169 Cal.App.4th 1385, 1390–1391, this court discussed the scope of directors' inspection rights, in terms of their intended function of promoting the directors' proper exercise of fiduciary duties to the corporation and shareholders. (See § 309, subd. (a) [directors must serve "in good faith, in a manner such director believes to be in the best interests of the corporation and its shareholders"].) "Although it is generally presumed that the directors of a corporation are acting in good faith [citation], a court is required to defer to the business judgment only of disinterested directors. [Citation.] ' "[A] director is independent when he is in a position to base his [or her] decision on the merits of the issue rather than being governed by extraneous considerations or influences." [Citation.]' " (*Tritek, supra,* 169 Cal.App.4th 1385, 1390.)

■ SERI challenges Wolf's statutory standing as an independent director to conduct such a prospective inspection, because he lost status as a director immediately after filing suit. "Standing" is an aspect of justiciability, which is decided upon the intertwined criteria of standing and ripeness. (3 Witkin, Cal. Procedure, *supra,* Actions, § 21, pp. 84–85.) " 'One who invokes the judicial process does not have "standing" if he, or those whom he properly represents, does not have a real interest in the ultimate adjudication because the actor has neither suffered nor is about to suffer any injury of sufficient magnitude reasonably to assure that all of the relevant facts and issues will be adequately presented.' " (*Id.* at p. 84.) A plaintiff must "possess standing to have the underlying controversy adjudicated and the desired relief granted after a trial on the merits . . . ." (*Common Cause, supra,* 49 Cal.3d 432, 439–440.)

■ In *Californians for Disability Rights v. Mervyn's, LLC, supra,* 39 Cal.4th 223, 232–233, the Supreme Court applied principles of standing: "For a lawsuit properly to be allowed to continue, standing must exist at all times until judgment is entered and not just on the date the complaint is filed. '[C]ontentions based on a lack of standing involve jurisdictional challenges and may be raised at any time in the proceeding.' [Citations.]" Arguably, the FAP fails to state its cause of action, because the requested relief, to a "director," cannot now be granted personally to Wolf. A plaintiff may lose

standing even where an actual controversy originally existed "but, by the passage of time or a change in circumstances, ceased to exist." (3 Witkin, Cal. Procedure, *supra*, Actions, § 21, pp. 84–86; see *Wilson v. L. A. County Civil Service Com.* (1952) 112 Cal.App.2d 450, 453 [246 P.2d 688].)

## B. Authorities and Analysis

This court and other courts have strictly applied standing rules in this statutory context. In *Chantiles, supra*, 37 Cal.App.4th 914, 920–926, the court had before it an individual who was no longer on the board of a homeowners association, but who sought to assert a director's inspection rights, in the context of challenging election results (under § 8334, creating association directors' inspection rights that are parallel to those of § 1602). The Court of Appeal discussed the justification for considering the action not to be moot, in light of the director's leaving office during the appeal. The court ruled that the inspection demand represented an issue of recurring interest that should be decided. (*Chantiles, supra*, at pp. 920–926.)

Next, on the merits of the inspection request by the former director, the court in *Chantiles* considered out-of-state authority, such as *Oliver, supra*, 693 S.W.2d 340, 343, in which it was held, " 'the right of a director [of a nonprofit corporation] to inspect the books and records of the corporation ceases on his removal as a director, by whatever lawful means[.]' " (*Chantiles, supra*, 37 Cal.App.4th 914, 920.)

Although the former director, Chantiles, conceded he no longer had any director's inspection rights, he continued to pursue his inspection request because he believed the election that removed him had not been fairly conducted. The corporation objected, raising privacy concerns about home-owner ballots that had been cast. The superior court created a limited ballot inspection procedure to be conducted by the former director's own attorney, with certain privacy protections. However, the former director refused this proposed solution, "which strongly suggests his motive was not simply to check the math, but to find out how his neighbors actually voted. He cannot now complain that he was denied such an opportunity. The trial court's order was appropriate." (*Chantiles, supra*, 37 Cal.App.4th 914, 926.) The appellate court majority additionally based its holding upon the statement that "since Chantiles is no longer a director, he has no current inspection rights. Nor do we perceive any legitimate corporate interest he would have in the future, if reelected, for inspecting the [same] ballots." (*Chantiles, supra*, 37 Cal.App.4th 914, 926, fn. 6.)

In a concurring opinion, Justice Crosby disagreed with the majority that there were any reasonably enforceable expectations of privacy by those

voters, but he concurred in the result because "Chantiles was a member of the homeowners association's board of directors when he filed this action. He lost that seat in an election after the trial court entered judgment. As he is no longer a director, he enjoys no inspection rights under Corporations Code section 8334 [(parallel section to § 1602)]; and for that reason alone I concur in the decision not to award him any relief." (*Chantiles, supra*, 37 Cal.App.4th 914, 927 (conc. opn. of Crosby, J.).) Further, the concurring opinion reasoned that the fiduciary duties of the former director were strong enough to override any privacy expectations of the homeowner/voters. "[A] director . . . is potentially liable for failure to exercise appropriate oversight, [so] an unconditional right to inspect is essential." (*Id.* at p. 929 (conc. opn. of Crosby, J.).)

In *Hartman v. Hollingsworth* (1967) 255 Cal.App.2d 579 [63 Cal.Rptr. 563] (*Hartman*), the petitioner was a director of a dissolved corporation, who sought inspection of corporate books.[5] He claimed an ongoing need to inspect, based on " 'various legal obligations' " flowing from his directorship and an " 'absolute right' " to examine the corporate records to protect himself "accordingly." (255 Cal.App.2d at pp. 581–582.)

In *Hartman, supra*, 255 Cal.App.2d 579, 582, the appellate court interpreted the statute (a former version of § 1602) with a view toward enforcement of its evident purposes. The unqualified statutory right of inspection allowed to a director was created only to aid the performance of his or her fiduciary duties to the corporation and its stockholders, such as in the winding-up process. When a "dead" corporation was no longer being wound up, the director had no further protected need to inspect corporate documents related to his former status. (255 Cal.App.2d at pp. 581–582.) Thus, the scope of the statute granting the right to inspect records was restricted to current, not former, directors of corporations, when they retained responsibilities for winding up the corporation. That particular request for records was not properly made in pursuit of that legitimate purpose, so the petitioner (essentially a former director) did not qualify under the inspection statute. (*Id.* at pp. 581–582.)

In *Tritek, supra*, 169 Cal.App.4th 1385, 1390–1391, this court interpreted section 1602 to hold that a corporate director could lose the "absolute" right to inspect corporate documents. That director had filed his own shareholder action that was adversary to the corporation, and this served to remove any statutory basis for his right to access to all corporate documents: "In this situation, a court may properly limit a director's inspection rights because the

---

[5] *Hartman, supra*, 255 Cal.App.2d 579, was disapproved on another point in *Penasquitos, Inc. v. Superior Court* (1991) 53 Cal.3d 1180, 1184 [283 Cal.Rptr. 135, 812 P.2d 154], for its adherence to common law rules about the lack of any surviving actions against a dissolved corporation; now, causes of action are not entirely lost by reason of such dissolution.

director's loyalties are divided and documents obtained by a director in his or her capacity as a director could be used to advance the director's personal interest in obtaining damages against the corporation." (169 Cal.App.4th at p. 1391.) In light of his newly acquired adversary status, the director could not properly continue to seek a director's access to documents that would be covered by the attorney-client privilege. (*Id.* at pp. 1391–1392.)

■ To be entitled to inspect corporate records, directors must remain disinterested and independent in the performance of their fiduciary duties. (*Tritek, supra,* 169 Cal.App.4th at p. 1391.) In our case, the pleadings and judicially noticeable materials from the original complaint and petition proceedings demonstrated to the trial court that before Wolf received notification he would not be renominated, Wolf had inadvertently transmitted to corporate official Borden a copy of the draft complaint in which he planned to sue SERI and Devco, to compel them to provide more complete responses to his October 2007 request for information. Even though Wolf remained a director when he filed suit, his director's entitlement to inspection of corporate records was severely undermined by those admissions of his potential adversary status to SERI.

■ *Chantiles, supra,* 37 Cal.App.4th 914, the leading case in this area, was decided in 1995, and has not been overruled or limited in its holding or reasoning that *current* director status is required to pursue *current* inspection rights. This line of cases will not allow enforcement of any absolute director's right of inspection to a former corporate director, when the reason for the inspection right (holding office and performing fiduciary duties as a director) no longer exists. These authorities strictly interpret standing rules in applying the language of section 1602. Under the law as we understand it, Wolf has lost the status and standing that are required to justify pursuit of his asserted director's inspection rights. The trial court correctly applied standing principles and interpreted the statute to find that Wolf was no longer under such fiduciary obligations, as a former director, to justify his claim to an ongoing and enforceable right to inspect corporate records. (*Common Cause, supra,* 49 Cal.3d at pp. 439–440.)

However, Wolf makes alternative arguments to justify recognition of ongoing inspection rights, as we next discuss.

IV

*IMPLIED STATUTORY OR EQUITABLE EXCEPTIONS*

Wolf contends that his inspection rights as a corporate director became fixed when he filed his original pleading, and he therefore falls within some

implied statutory or equitable exception to the standing requirements of section 1602. He relies on out-of-state law that designates, for a discharged director, a "qualified right . . . covering a period of his directorship, whenever in the discretion of the trial court he can make a proper showing by appropriate evidence that such inspection is necessary to protect his personal responsibility interest as well as the interest of the stockholders." (*Cohen v. Cocoline Products, Inc., supra,* 127 N.E.2d 906, 908, italics omitted; see also *Oliver, supra,* 693 S.W.2d 340 [Tenn. law].)

### A. Nature of Removal from Office

Wolf first relies on language in *Chantiles, supra,* 37 Cal.App.4th 914, 920, to argue that " 'the right of a director [of a nonprofit corporation] to inspect the books and records of the corporation ceases on his removal as a director, *by whatever lawful means.*' " (Italics added.) According to Wolf, he was not "lawfully" removed, and he therefore retains inspection rights. In support, he argues that even if a valid notice were originally given for the September 10 annual meeting, when he received the letter from Borden that privately removed him from the notice of listed candidates, the meeting was no longer completely lawfully noticed, such that he was unlawfully not reelected. He relies on section 301, subdivision (b), generally holding that a director holds office "until the expiration of the term for which elected and until a successor has been elected and qualified," to argue that he must retain directorship status for inspection purposes.

■ Wolf's argument about his status should be viewed in light of the purpose of the rules requiring adequate notice to shareholders about the agenda for an annual meeting. Section 601, subdivisions (a) and (f), set forth the requirements for notice of annual meetings, including their place, time and manner of shareholder participation. Section 601, subdivision (a) states: "The notice of any meeting at which directors are to be elected shall include the names of nominees *intended at the time of the notice to be presented by the board for election.*" (Italics added.) Section 601, subdivision (f) provides that shareholder approval of proposals is not valid unless the "general nature" of the proposal presented was stated in the notice of the meeting or in the written waiver of notice document. Those statutory requirements are reflected in the corporate articles for SERI, regarding notice of meetings.

The authors of 9 Witkin, Summary of California Law (10th ed. 2005) Corporations, section 86, page 859, explain that directors must properly call meetings, and obtain a quorum, for exercise of their powers as a board. This requirement of notice "is primarily for the protection of shareholders and may be relaxed where the shareholders have waived it or have otherwise consented to informal action." (*Ibid.*)

Under these standards, Wolf, as a director or former director, cannot show that the letter that notified him he would not be renominated amounted to a change in the notice given, that somehow invalidated the results of the election at the annual meeting. The notice was accurate when given, containing the names of nominees "intended at the time of the notice to be presented by the board for election," including Wolf. (§ 601, subd. (a).) The general nature of the business of the meeting did not change. (§ 601, subd. (f).)

 Moreover, Wolf cannot successfully plead, as a matter of law, that it was wrongful for the board to decline to renominate him as a director. In the first place, not being renominated is not exactly the same as being removed, and Wolf's term expired. His allegations that he was removed for the sole purpose of avoidance of corporate disclosure obligations amount only to contentions or conclusions of law that do not withstand demurrer. Under section 303, subdivision (a), a director may be removed without cause if the removal is approved by the shareholders, subject to certain protections. For example, section 303, subdivision (c) allows directors to be "removed" prior to the expiration of the director's term of office, only under certain circumstances (for cause or incompetence as confirmed by court order; §§ 302, 304). This record does not reflect whether Wolf has been replaced, but in any case, he has not pled the corporation is unable to function due to an inadequate number of directors. (See § 301, subd. (b), providing that a director holds office until the expiration of his or her term and until a successor is in place.)

 Wolf has no authority to support his argument that his inspection rights continue simply because he was still in office when he made the inspection requests and when he filed suit. Despite his public policy arguments promoting corporate accountability, he has not been transformed into an ombudsman or freelance investigator, for purposes of inspecting corporate records. When he lost his seat on the board, he lost standing to assert recognized inspection rights, since they are intended to promote the appropriate exercise of a director's fiduciary duties. (*Common Cause, supra,* 49 Cal.3d 432, 439–440.) The current record does not support a claim that he was unlawfully removed, and he has not shown how he can plead around the fact that his term expired, in order to plead an equitable right to inspection.

### B. Potential Personal Liability of Former Director

Wolf alternatively asserts that he should be allowed to inspect SERI corporate records, even though he has left its board, because he might come under some personal exposure to liability, stemming from the time that he served upon the board. He again relies on the authority that a discharged director seeking to inspect corporate records may have a "qualified right . . . covering a period of his directorship, whenever in the discretion of the trial

court he can make a proper showing by appropriate evidence that such inspection is necessary *to protect his personal responsibility interest* as well as the interest of the stockholders." (*Cohen v. Cocoline Products, Inc., supra,* 127 N.E.2d 906, 908, italics added & omitted.)

Wolf fears that he may be subject to claims (by minority shareholders) that, while he was in office, he did not do enough to combat corporate mismanagement, so he should be able to defend himself by inspecting records of SERI transactions. He cites to several sections that might have been violated by others, such as those prohibiting corporate officers or directors from making false reports or altering records, which might lead to some imposition of penalties for defrauding shareholders or misusing corporate assets. (§§ 1507, 2201, 2251, 2254, 2255.)

At the pleading stage, to support allegations of continued inspection rights of a director, Wolf would have to set forth facts supporting his potential exposure to personal liability for his own acts as a director or acts of other corporate officers, such as if he "(1) participated in the acts, (2) was negligent in supervising the business, or (3) was negligent in the appointment of the wrongdoer. The director cannot be held liable for wrongs of officers that take place after the director has ceased to be a director." (9 Witkin, Summary of Cal. Law, *supra*, Corporations, § 105, pp. 881–882.) Thus, Wolf would have to show facts supporting allegations that the business judgment rule would not likely protect him from personal liability, for any ultimately adjudicated failure on his watch as a director, such as failing to remedy corporate misconduct by wrongdoers. (See *ibid.*) Wolf has not shown facts to support assertions of continued inspection rights of a director, on the basis that personal liability is a realistic threat to him.

We emphasize that our analysis is restricted to Wolf's claims for statutory or equitable relief due him, in his capacity as a director or former director, and we do not discuss any alternative remedies to which he may theoretically be entitled, on some other legal theory or in some other pleading. He may be able to pursue other avenues to redress alleged corporate mismanagement to promote his corporate accountability position. We decide only that Wolf has not shown any error or abuse of discretion in the superior court's well-reasoned ruling that dismissed the FAP, for failure to state a claim upon which relief can be granted.

## DISPOSITION

The judgment of dismissal is affirmed. Costs are awarded to respondents.

Nares, J., and McIntyre, J., concurred.