[No. G029761. Fourth Dist., Div. Three. July 30, 2002.]

JOSEPH P. SALINE, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
COMMONWEALTH ENERGY CORPORATION, Real Party in Interest.

## COUNSEL

Enterprise Counsel Group, David A. Robinson and Benjamin P. Pugh for Petitioner.

No appearance for Respondent.

McDermott, Will & Emery, James L. Sanders, David R. Gabor, David Hirsch; Ervin, Cohen & Jessup, Eliot G. Disner, Robert M. Waxman and Andres F. Quintana for Real Party in Interest.

## OPINION

**MOORE, J.**—Petitioner Joseph P. Saline, a member of the board of directors of real party in interest Commonwealth Energy Corporation (CEC), seeks a writ of mandate directing the trial court to vacate its order restricting Saline's access to corporate records and directing that he keep the contents of the records confidential. Saline argues the order runs afoul of Corporations Code section 1602 and constitutes an unlawful prior restraint in violation of the First Amendment of the United States Constitution. CEC responds that the restrictions the court imposed are "just and proper" under Corporations Code section 1602, given Saline's alleged misbehavior and conflicts of interest. We hold that the trial court failed to make the findings necessary to justify the limitation on Saline's right to corporate documents and that a prior restraint on his speech has no legal basis. We therefore grant the petition.

## I

### FACTS AND PROCEDURAL BACKGROUND

CEC is a provider of electrical energy services to consumers. A contentious dispute between CEC and its former chief executive officer, Fred Bloom, led to Saline's election to the CEC board of directors in November 2000. CEC disputed Saline's status, but it was confirmed by the court in a prior action. Because of the manner in which he was elected, Saline claims CEC's management never accepted him as a director and denied him the ability to participate in the corporation's management. The current CEO, Ian Carter, wrote in an e-mail to the other directors that he did not trust Saline and purposefully chose to "work around him . . . as much as possible . . . ."

Since Saline's election, he and the other board members have, not surprisingly, disagreed regarding the company's future. While everyone seems to agree the company should be taken public, Saline claims that Carter has rejected any avenue for doing so that does not involve an initial public offering (IPO), because Carter's contract calls for generous stock options if the company goes public through an IPO. For its part, CEC claims Saline tried to take over CEC, and in doing so sent confidential documents to Denis Costa Tseklemis, the owner of several other energy corporations. CEC also claims Saline had a conflict of interest because he was a shareholder in New World Power Corporation (NWPC), and he was encouraging NWPC to acquire CEC. CEC also argues that Saline has disclosed "confidential business and proprietary information" to third parties. Specifically, CEC alleges Saline posted information on the Internet relating to the cost of an in-house billing system. CEC claims this was in direct violation of a confidentiality agreement Saline signed.

Saline claims that despite repeated requests, he was denied access to corporate documents. In August 2001, he brought an action to enforce his inspection rights. Saline specified 14 categories of documents to which he had been denied access. The court heard oral argument and later issued a minute order stating that CEC was required to allow Saline to inspect and copy the 14 categories of documents identified by his petition. The order imposed two restrictions on Saline: "1. Petitioner and counsel are prohibited from disclosing or discussing the corporate documents with anyone other than themselves and responding party's board members. 2. Petitioner is not granted access to documents protected by the attorney client privilege and work product doctrine."

Saline sought a writ of mandate, challenging the first condition only, and the general proposition that a court may place restrictions on the rights of

directors to review corporate documents. He seeks to vacate the order as an unconstitutional prior restraint on his right to free speech. He alleged he was the target of misinformation being sent to shareholders seeking proxies for the upcoming annual meeting, and the "gag order" prevented him from using information discovered via his inspection rights to offer shareholders a dissenting opinion. We issued an alternative writ directing the superior court to set aside its prior order or show cause why a peremptory writ should not issue.

Our order did not stay the shareholder meeting, however, and the election proceeded in November. Saline claims to have won that election; CEC claims it was stolen by Saline. Although the urgency appears to have passed, we consider the free speech issue raised to be a matter of public importance worthy of this court's attention.

II

DISCUSSION

This petition presents two related questions: (1) Is a corporate director's right to inspect corporate documents subject to restriction to prevent a tort against the corporation, and if so, did CEC make a proper evidentiary showing to justify such restrictions in this case? (2) May a court restrict a corporate director from discussing the contents of corporate documents with third parties?

*Standard of Review*

■ The scope of a corporate director's right to inspect corporate documents and the question of whether a prior restraint is permissible are pure questions of law and are reviewed de novo. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799 [35 Cal.Rptr.2d 418, 883 P.2d 960].) The question of whether a sufficient evidentiary showing was made is reviewed to determine if the court's ruling was supported by substantial evidence, whether or not contradicted. (*Bickel v. City of Piedmont* (1997) 16 Cal.4th 1040, 1053 [68 Cal.Rptr.2d 758, 946 P.2d 427].)

*Restricting a Director's Right to Corporate Documents*

Corporations Code section 1602 states, in part: "Every director shall have the absolute right at any reasonable time to inspect and copy all books, records and documents of every kind and to inspect the physical properties of the corporation . . . ." ■ Courts have recognized that "[d]irectors

occupy a fiduciary relationship to the corporation and its stockholders [citation], and the unqualified right of inspection accorded them by the statute here invoked is manifestly in aid of such principle." (*Hartman v. Hollingsworth* (1967) 255 Cal.App.2d 579, 581-582 [63 Cal.Rptr. 563].)

On the other hand, in *Havlicek v. Coast-to-Coast Analytical Services, Inc.* (1995) 39 Cal.App.4th 1844 [46 Cal.Rptr.2d 696], the court held that "absolute" did not always mean "absolute," and the court could place "just and proper" restrictions on access to corporate records. The court hypothesized: "A disgruntled director unambiguously announces his or her intention to violate his or her fiduciary duties to the corporation . . . by using inspection rights to learn trade secrets, gain access to confidential customer lists, and compete with the corporation. In this situation, does the Legislature want the judiciary to come to the aid of the disgruntled director, enforce the 'absolute right' to inspect and help the director commit a tort against the corporation? No." (*Id.* at pp. 1855-1856, fn. omitted.)

We agree with the *Havlicek* court that in such an egregious case, restrictions may be appropriate. The court went on to note, however, that to establish the propriety of restrictions, "the corporation must demonstrate, by evidentiary showing, that a protective order is necessary to prevent a tort against the corporation." (*Havlicek v. Coast-to-Coast Analytical Services, Inc. supra*, 39 Cal.App.4th at p. 1856.)

The evidentiary showing offered by CEC in the lower court was woefully inadequate to establish the necessity limiting Saline's access to corporate documents. There was no evidence that Saline intended to use the documents to disclose trade secrets, compete with or otherwise harm CEC. CEC claims it established Saline "breached his confidentiality agreement with Commonwealth, posted confidential information concerning the company on the Internet, defamed management in public, breached his fiduciary responsibilities to Commonwealth and maintained significant conflicts of interest as Commonwealth's director." Only the issues related to the prevention of a tort resulting from Saline's inspection of the documents—not the entirety of his conduct as a director—are relevant to the question of whether limiting Saline's access to corporate documents was appropriate.

The only behavior truly shedding light on this question is the suggestion that Saline would disclose confidential information, and the only example of this behavior was the allegedly confidential information posted on the Internet. Although CEC does not fully explain the import of this information, it apparently relates to the cost of an in-house software system. While we accept, for the sake of argument, CEC's statement that this was confidential information, we do not understand, and CEC does not explain, that

Saline knew the information was confidential or how the company was damaged by its disclosure. Simply put, this bit of information was not the apocryphal "secret formula," the disclosure of which damaged the company beyond all repair. Nor does CEC's argument regarding the confidentiality agreement help its case. The confidentiality agreement, by its terms, is limited to "topics discussed during the course of any meeting" and not every corporate document. CEC's brief in the trial court did not specify how Saline breached this agreement, only stating that Saline had refused to sign a statement saying that he had not done so. This is not evidence that Saline breached the agreement.

Thus, CEC did not produce evidence that Saline intended to use the documents for anything but a proxy fight with CEC's management. Without evidence that Saline intended to use the documents sought to commit a tort against CEC, the trial court improperly limited Saline's access to corporate documents.

Absent any evidence Saline intended to use the documents he sought to commit a tort against the corporation, CEC's other allegations can be properly addressed through a lawsuit seeking damages for the redress of Saline's alleged directorial sins. While we agree with the principle set forth in *Havlicek*, it should only be applied in extreme circumstances where a preponderance of the evidence establishes the director's clear intent to use the documents to commit an egregious tort—one that cannot be easily remedied by subsequent monetary damages—against the corporation.

*Prior Restraint*

The trial court's order stated, in part: "1. Petitioner and counsel are prohibited from disclosing or discussing the corporate documents with anyone other than themselves and responding party's board members." This order placed a direct restraint on Saline's right to freedom of speech under the United States and California Constitutions. (U.S. Const., 1st Amend.; Cal. Const., art. I, § 2, subd. (a).)

Both parties apparently believe we should analyze this situation as if it were a gag order on trial participants. ▆▆ "Orders which restrict or preclude a citizen from speaking in advance are known as 'prior restraints,' and are disfavored and presumptively invalid. Gag orders on trial participants are unconstitutional unless (1) the speech sought to be restrained poses a clear and present danger or serious and imminent threat to a protected competing interest; (2) the order is narrowly tailored to protect that interest; and (3) no less restrictive alternatives are available." (*Hurvitz v. Hoefflin* (2000) 84 Cal.App.4th 1232, 1241 [101 Cal.Rptr.2d 558], fns. omitted.)

This analysis is inapplicable, however, because the gag order at issue did not arise in the context of a trial. ■ The "protected competing interest" during a trial is the constitutional right to a fair trial. (*Hurvitz v. Hoefflin, supra,* 84 Cal.App.4th at p. 1243.) ■ Here there is no competing constitutional right, and therefore no legal basis for a prior restraint. CEC's only remedy is to sue Saline for breach of his fiduciary duties, if such a breach occurs.

*Saline's Code of Civil Procedure Section 170.6 Motion*

■ After we issued the alternative writ, Saline filed a motion pursuant to Code of Civil Procedure section 170.6, subdivision (2), requesting the trial judge's recusal. The motion was denied on November 7, 2001, and Saline argues for the first time in his traverse, filed March 1, 2002, that the court erred. A traverse is not a verified petition, and therefore not a proper vehicle to raise an entirely new issue; Saline should have filed a new petition to challenge the order. Moreover, as the traverse was filed long after 60 days following the order, the request is untimely.

## III

### DISPOSITION

The petition is granted. The alternative writ is discharged. Let a peremptory writ of mandate issue directing the superior court to vacate its order limiting Saline's access to corporate records and his speech regarding those records and to enter a new and different order directing CEC to provide Saline complete access to the records in accordance with Corporations Code section 1602. Saline shall recover his costs.

Rylaarsdam, Acting P. J., and O'Leary, J., concurred.

On August 7, 2002, the opinion was modified to read as printed above.