Filed 6/23/22

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----


| | |
|---|---|
| RICK FOWLER, | C092179 |
| Plaintiff and Respondent, | (Super. Ct. No. 34-2019-80003150-CU-WM-GDS) |
| v. | |
| GOLDEN PACIFIC BANCORP, INC., | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of Sacramento County, James P. Arguelles, Judge.  Reversed with directions.

Law Office of Stephanie J. Finelli and Stephanie J. Finelli for Defendant and Appellant.

Tisdale & Nicholson and Michael D. Stein for Plaintiff and Respondent.


This is an action to compel an inspection of books and records pursuant to Corporations Code section 1600 et seq.[1]  Plaintiff Rick Fowler (Fowler) sought a writ of

---

[1] Undesignated statutory references are to the Corporations Code.

1

mandate against defendant Golden Pacific Bancorp, Inc. (Bancorp), to enforce his statutory rights as a director and majority shareholder to inspect corporate books and records. Bancorp opposed the petition, arguing that the trial court should curtail Fowler's inspection rights because he is involved in ongoing litigation with Bancorp and could use the information to undermine Bancorp's position in the lawsuit. Unpersuaded that Bancorp met the heavy burden necessary to curtail Fowler's inspection rights, the trial court granted Fowler's writ petition.

Bancorp appealed, contending that the trial court erred by (1) allowing Fowler to submit additional evidence on reply without permitting Bancorp an adequate opportunity to respond; and (2) granting the writ petition and permitting Fowler to have unfettered access to Bancorp's corporate books and records.

After we issued an oral argument waiver notice, Bancorp moved to dismiss the appeal as moot. Bancorp asserted that due to the recent acquisition of Bancorp by Social Finance, Inc., Fowler is no longer a Bancorp board member, and therefore it is impossible for this court to grant effective relief. Fowler requested oral argument. We deferred ruling on the motion until after oral argument.

We shall conclude that the primary issue raised in this appeal is moot because Fowler is no longer a member of Bancorp's board of directors and therefore has no director's inspection rights. Nevertheless, we exercise our discretion to reach the merits because it presents an issue of substantial and continuing public interest: whether a director's "absolute" right of inspection under section 1602 may be curtailed because the director and corporation are involved in litigation and there is a possibility the documents could be used to harm the corporation.

We shall conclude the mere possibility that information could be used adversely to the corporation is not by itself sufficient to defeat a director's inspection rights. Rather, any exception to the general rule favoring unfettered access must be limited to extreme cases, where enforcing an "absolute" right of inspection would produce an absurd result,

2

such as when the evidence establishes the director's clear intent to use the information to breach fiduciary duties or otherwise commit a tort against the corporation.

We decline to reach the other question referenced in the parties' briefs concerning Fowler's inspection rights as a shareholder, because that issue was not resolved by the trial court and the record is insufficiently developed for us to determine whether it is moot. Thus, we shall remand this matter for the trial court to consider whether that issue is moot and, if not, to resolve any remaining disputes in the first instance.

FACTUAL AND PROCEDURAL BACKGROUND

Bancorp was a bank holding company conducting business through its wholly owned subsidiary, Golden Pacific Bank, N.A. Fowler was a member of Bancorp's board of directors and its largest individual shareholder, holding over 19 percent of the outstanding stock. Fowler also is the chief operating officer of a law firm, Kronick, Moskovitz, Tiedemann & Girard (KMTG).

In July 2018, Bancorp filed a lawsuit in the Sacramento County Superior Court (case No. 34-2018-00236905) against KMTG, an individual attorney at KMTG, and Fowler (the malpractice lawsuit). The lawsuit arose out of KMTG's representation of Bancorp in prior litigation against a company called BillFloat, Inc. (the BillFloat litigation). Bancorp's amended complaint alleges claims against KMTG and its attorney for breach of contract, breach of professional duties, professional negligence, and breach of fiduciary duties in connection with the prosecution and eventual settlement of the BillFloat litigation. Among other things, the complaint alleges that KMTG and the attorney overbilled for services, negligently failed to evaluate and prepare the case for trial, and caused Bancorp to accept a grossly inadequate settlement amount.

The complaint also alleges claims against Fowler for negligence, breach of fiduciary duty, concealment, and fraud based on his actions as a Bancorp director. Specifically, it asserts that Fowler breached his fiduciary duties by persuading Bancorp to hire KMTG for the BillFloat litigation despite knowing that KMTG was not competent to

3

handle the litigation. It further alleges that Fowler used his position as director to persuade Bancorp to settle the BillFloat litigation for a grossly inadequate amount because Fowler knew KMTG had failed to conduct sufficient discovery and investigation to prepare the case for trial.

In September 2018, two months after Bancorp filed the malpractice lawsuit, Fowler delivered to Bancorp a written demand to inspect and copy the following books and records pursuant to section 1600 et seq.:

1. A list of the names, addresses, e-mail addresses, and holdings of all Bancorp shareholders;

2. A breakdown of the expense and income balance sheet items labeled "Other" for Bancorp and its wholly owned subsidiary bank;

3. A breakdown of where on the 2017 and 2018 consolidated financial statements the BillFloat settlement payment was booked, and where KMTG's legal fees for 2016, 2017, and 2018 were booked;

4. Any change in control/severance/golden parachute agreements for Bancorp-affiliated parties;

5. Any resolutions approving change in control agreements or an increase in director fees and/or bonuses for 2016, 2017, and 2018;

6. Any documents evidencing payment of the personal legal fees of Bancorp president and chief executive officer, Virginia Varela, in 2016, 2017, and 2018;

7. The loan file pertaining to the Axis Energy SBA loan; and

8. The bank's accounting books and records, and meeting minutes for its board and committees from September 2017 through the date of the request.

Fowler asserted that, as a director, he had an "absolute right" to inspect the records under section 1602. Bancorp, however, refused to permit inspection, citing conflicts of interest and concerns that Fowler was seeking the records for an improper purpose, namely, to undermine Bancorp's position in the malpractice lawsuit.

4

Fowler did not immediately seek a peremptory writ to enforce his statutory inspection right. Instead, in November 2018, Fowler served Bancorp with a request for production of documents in the malpractice lawsuit seeking records substantially similar to those sought in his inspection demand letter.

When Bancorp refused to produce the requested documents, Fowler filed a motion to compel. In support of his motion, Fowler argued that the requested documents were relevant to Bancorp's claims and his defenses in the malpractice lawsuit. Bancorp opposed the motion, asserting, inter alia, that most of the records Fowler requested were irrelevant to the lawsuit and would only be of interest in his capacity as a "disgruntled shareholder/director." The court agreed with Bancorp. It denied the motion to compel, concluding that the document requests were overbroad, invaded third party privacy rights, and sought information that was not relevant.

Shortly thereafter, Fowler filed this action for a peremptory writ of mandate to enforce his statutory right to inspect Bancorp's books and records. His amended petition alleges that he has an "absolute right" as a director and shareholder to inspect and copy the records pursuant to sections 1600 and 1602. In a supporting declaration, Fowler stated that he requested the inspection to protect his interests as Bancorp's single largest shareholder and to fulfill his fiduciary duty as a director to stay informed about Bancorp's financial condition and operations.

Bancorp opposed the writ petition, asserting that inspection should be denied because Fowler is not a disinterested director and his only motive in requesting the records is to "dismantle and undermine" Bancorp's lawsuit against him and the law firm for which he works. Bancorp characterized the petition as an attempted "end-run" around the adverse discovery ruling in the malpractice lawsuit.

5

To support its claim that Fowler was requesting the documents for an improper purpose, Bancorp submitted a declaration from Bancorp board member David Roche.[2] Roche declared, inter alia, that (1) Fowler is a party to ongoing litigation with Bancorp in which it is alleged Fowler breached his fiduciary duties; (2) Fowler repeatedly stated his desire to have the litigation dismissed; (3) Bancorp's board believes that allowing Fowler to inspect and copy the requested records would "severely undermine" its position in the litigation; (4) Fowler previously sought to compel discovery of the same records in the lawsuit, but his request was denied; (5) it was only after the adverse discovery ruling that Fowler filed the writ petition; and (6) Fowler never previously made a demand to inspect Bancorp's corporate records.

In reply, Fowler filed a supplemental declaration responding to the factual assertions made in Bancorp's opposition papers. Fowler declared, "Contrary to [Bancorp's] supposition about my purpose in filing the Petition, I want to inspect the subject corporate records, especially the financial statements and working papers for these records, among other things, to learn how certain expenses and income items were calculated and what certain large numbers consist of, as well as how the compensation for [Bancorp's] Chief Executive Officer and its directors is being determined and the basis for and calculations of certain stock transactions with [Bancorp's] preferred shareholder."

In his supplemental declaration, Fowler also addressed why he never previously invoked his statutory right to inspect Bancorp's corporate records. He explained that before July 2017, he regularly received reports, had frequent exchanges with the chief executive officer and committee chairs, and had unrestricted access to most corporate documents through an online platform. It was only when Bancorp "cut off" his ability to

---

**2**    The trial court sustained evidentiary objections to the Roche declaration. The rulings on those objections are not challenged in this appeal.

contact employees and access corporate records online that it became necessary for him to invoke his statutory inspection rights.

The writ petition was heard on March 6, 2019. On the morning of the hearing, Bancorp filed a declaration of Virginia Varela, Bancorp's president and chief executive officer, which sought to refute various statements in Fowler's supplemental declaration, including his assertions that (1) he previously had online access to the records discussed in his September 2018 demand; and (2) he was wrongfully denied access to the basic financial information necessary for him to carry out his duties as a board member. The court agreed to consider the Varela declaration to the extent it responded to the factual assertions in Fowler's supplemental declaration, but refused to consider any new grounds for denying inspection.

After a hearing, the trial court granted the writ petition. In its ruling, the court agreed with Bancorp that Fowler's statutory inspection rights are not "absolute." However, the court ruled that a director's inspection rights can be curtailed only in " 'extreme circumstances' " in which the corporation establishes by a preponderance of the evidence the director's intent to commit an irremediable tort against the corporation. The court ruled that, notwithstanding the inherent conflict raised by the malpractice lawsuit, "[t]he preponderance of the evidence in this action does not establish Fowler's intent to commit a tort against [Bancorp], much less one that is irremediable in damages." The court thus enforced Fowler's right to inspect the corporate books and records under section 1602.

Judgment was entered on March 17, 2020. Bancorp filed a timely notice of appeal.

While the appeal was pending, Bancorp was acquired by Social Finance, Inc. (SoFi), by and through a merger with Gemini Merger Sub, Inc. (Gemini), a temporary subsidiary of SoFi formed solely for that purpose. Pursuant to the terms of the agreement, Gemini was merged into Bancorp, with Bancorp as the surviving corporation.

7

Further, under the agreement, the directors of Gemini became the directors of the surviving corporation. SoFi completed the acquisition of Bancorp on or about February 2, 2022.

DISCUSSION

I

*Mootness*

As a threshold issue, we consider whether the appeal is moot due to SoFi's acquisition of Bancorp.

An appeal becomes moot when the occurrence of an event makes it impossible for the appellate court to grant any effective relief. (*Newsom v. Superior Court* (2021) 63 Cal.App.5th 1099, 1109.) " '[A]n action which originally was based upon a justiciable controversy cannot be maintained on appeal if the questions raised therein have become moot by subsequent acts or events.' " (*Id.* at p. 1110.)

Bancorp argues that this appeal is moot and must be dismissed because, as a result of the acquisition, Fowler is no longer a shareholder or member of Bancorp's board of directors, and therefore no longer has standing to assert any inspection rights.

Fowler opposes Bancorp's motion to dismiss. He argues the case is not moot for several reasons, including that he filed a "dissenter's right" lawsuit challenging SoFi's acquisition of Bancorp and seeking a determination of the fair market value of his shares. Further, even if the case has been rendered technically moot, Fowler argues the appeal still should be decided because it concerns an issue of public importance that is likely to recur.

We agree with Bancorp that the issue of Fowler's inspection rights as a director is now moot. It is well established that a director's right to inspect corporate books and records ends upon his or her removal from office. (*Chantiles v. Lake Forrest II Master Homeowners Assn.* (1995) 37 Cal.App.4th 914, 920 (*Chantiles*).) A former director has no right to an ongoing and enforceable right to inspect corporate records. (*Wolf v. CDS*

8

*Devco* (2010) 185 Cal.App.4th 903, 919 (*Wolf*).) Here, it is undisputed that, as a result of SoFi's acquisition, Fowler is no longer a Bancorp director. Thus, Fowler can no longer assert rights as a director to inspect Bancorp's books and records, rendering the issue moot. (*Chantiles, supra*, at p. 920; *Wolf, supra*, at p. 919.)

Nevertheless, we may exercise our discretion to retain and decide an issue which is technically moot where the issue is of substantial and continuing public interest. (*Chantiles, supra*, 37 Cal.App.4th at p. 921; accord, *La Jolla Cove Motel & Hotel Apartments, Inc. v. Superior Court* (2004) 121 Cal.App.4th 773, 781-782.) We do so here. The scope of a director's inspection rights is one of public importance which we should decide, even if it is technically moot.

We reach a different conclusion, however, regarding Fowler's claim to shareholder inspection rights under section 1600, subdivision (a). This issue was not resolved by the trial court and the additional facts before us are inadequate for us to determine whether subsequent events have rendered the issue moot. Accordingly, we shall remand this matter for the trial court to consider whether subsequent events have rendered this issue moot and, if not, to resolve any remaining disputes in the first instance.

II

*Bancorp's Request for Additional Briefing*

Turning to the merits, we first address Bancorp's argument that the trial court erred by allowing Fowler to provide additional evidence in his reply papers while denying Bancorp a fair opportunity to respond.

As described above, in reply to Bancorp's opposition, Fowler submitted a supplemental declaration giving his reasons for demanding an inspection and explaining why he had not made similar demands in the past. Bancorp objected to the additional evidence and, in the alternative, requested additional time to file a sur-reply brief

9

addressing Fowler's new evidence. The court overruled Bancorp's objections and denied its request to file a sur-reply brief.

We review the trial court's ruling for an abuse of discretion (*Alliant Ins. Services, Inc. v. Gaddy* (2008) 159 Cal.App.4th 1292, 1299), and find no abuse here. As the trial court held, "Although Fowler is the petitioner in this proceeding, it was not his initial burden to provide reasons for the inspection." Unlike director inspection rights in other states, "[t]he California statutory scheme does not impose a 'proper purpose' requirement . . . ." (*Havlicek v. Coast-to-Coast Analytical Services, Inc*. (1995) 39 Cal.App.4th 1844, 1851 (*Havlicek*); cf. Del. Code Ann. tit. 8, § 220.) Thus, Fowler was not required in his moving papers to articulate a proper purpose for the inspection reasonably related to his interests as a director. He merely needed to show that he was a director and that he made a demand for inspection, which was refused. (§§ 1602, 1603.)

When Fowler made that showing, the burden shifted to Bancorp to show why the inspection should be curtailed by "just and proper conditions." (§ 1603; *Havlicek, supra*, 39 Cal.App.4th at p. 1856; *Saline v. Superior Court* (2002) 100 Cal.App.4th 909, 915 (*Saline*).) In attempting to meet that burden, Bancorp presented evidence to show that Fowler was seeking the documents for an improper purpose. The trial court correctly ruled that Fowler was entitled to respond with countervailing evidence in his reply.

Bancorp argues that because the court allowed Fowler to refute the evidence presented in the opposition, the court was obliged to give Bancorp the same opportunity. But Bancorp *was* given an opportunity to refute the additional evidence presented in the reply. On the morning of the hearing, Bancorp filed the Varela declaration to "refute many of the misstatements and omissions" in Fowler's supplemental declaration. The court considered that declaration to the extent it responded to the factual assertions in the supplemental declaration. The record shows that Bancorp had a fair opportunity to respond. Bancorp has failed to demonstrate that the trial court abused its discretion in

10

refusing to allow it additional time to file a sur-reply, much less that it was prejudiced by the refusal.

## III

### *Fowler's Right to Inspect Corporate Records*

Bancorp next argues that the trial court erred in granting the petition to enforce Fowler's right to inspect corporate books and records under section 1602.  We disagree.

A.    *The scope of a director's inspection rights*

In reviewing the trial court's judgment granting a petition for writ of mandate, we apply the substantial evidence test to the trial court's factual findings.  (*Vasquez v. Happy Valley Union School Dist.* (2008) 159 Cal.App.4th 969, 980.)  Legal issues, such as statutory interpretation, are reviewed de novo.  (*Ibid.*)  The scope of a director's right to inspect corporate documents is a question of law subject to de novo review.  (*Saline, supra*, 100 Cal.App.4th at p. 913.)

In construing section 1602, as with any statute, our task is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law.  (*Sierra Club v. Superior Court* (2013) 57 Cal.4th 157, 165.)  We begin "with the words of the statute because they generally provide the most reliable indicator of legislative intent."  (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 871.)  If the language contains no ambiguity, we generally presume the Legislature meant what it said, and the plain meaning controls.  (*Garcetti v. Superior Court* (2000) 85 Cal.App.4th 1113, 1119.)

Section 1602, which governs the right of inspection, provides in relevant part: "Every director shall have the absolute right at any reasonable time to inspect and copy all books, records and documents of every kind and to inspect the physical properties of the corporation of which such person is a director and also of its subsidiary corporations, domestic or foreign."  (§ 1602.)  By its plain terms, section 1602 establishes a broad right of inspection.  (*Havlicek, supra*, 39 Cal.App.4th at p. 1852.)  The Legislature's choice of the word "absolute" suggests a right "having no restriction, exception, or qualification."

(Merriam-Webster Unabridged Dict. Online (2022) <https://www.merriam-webster.com/dictionary/absolute> [as of June 10, 2022], archived at <https://perma.cc/932S-6SJA>.)  This "absolute" right reflects a legislative judgment that directors are better able to discharge their fiduciary duties to the corporation and its shareholders "if they have free access to information concerning the corporation." (*Havlicek*, at p. 1852; *Hartman v. Hollingsworth* (1967) 255 Cal.App.2d 579, 581-582.)

Nevertheless, decisional authority establishes that a director's right to inspect documents is subject to exceptions.  (*Havlicek, supra*, 39 Cal.App.4th at p. 1855.)  While the "absolute right" to inspect documents is the general rule in California, courts have held that the literal meaning of the words of the statute may be disregarded where necessary to avoid absurd results.  (*Havlicek*, at p. 1856; see also *Anderson Union High School Dist. v. Shasta Secondary Home School* (2016) 4 Cal.App.5th 262, 279 [the language of a statute should not be given a literal meaning if doing so would result in absurd consequences].)  Thus, a trial court may impose  "just and proper conditions" upon a director's inspection rights in appropriate cases.  (§ 1603, subd. (a);[3] *Havlicek*, at p. 1856; *Saline, supra*, 100 Cal.App.4th at p. 914.)

The full scope of exceptions to a director's "absolute" inspection rights remains unsettled.  But our colleagues in other appellate districts have identified certain circumstances in which inspection rights may be curtailed.

In *Chantiles, supra*, 37 Cal.App.4th 914, the Fourth Appellate District, Division Three, held that the "absolute" right of a homeowners association director to access

---

**3**     Section 1603, subdivision (a) provides, in part:  "Upon refusal of a lawful demand for inspection, the superior court of the proper county, may enforce the right of inspection with just and proper conditions or may, for good cause shown, appoint one or more competent inspectors or accountants to audit the books and records kept in this state and investigate the property, funds and affairs of any domestic corporation or any foreign corporation keeping records in this state . . . and to report thereon in such manner as the court may direct."

records may be limited to preserve the constitutional rights of members to keep their voting decisions private. (*Id*. at pp. 918, 926.) In *Chantiles*, a director who believed that he had been shortchanged in the tabulation of proxy votes, filed a petition to inspect and copy all the ballots cast in the association's annual election. (*Id*. at p. 919.) But the trial court refused to permit the director unfettered access to the ballots. Instead, the court established a procedure whereby the director's attorney could inspect the ballots while preserving the secrecy of how each individual member voted. (*Id*. at pp. 920, 926.) The appellate court affirmed. It held that the trial court had properly balanced the competing interests and determined that the director's statutory right to an unqualified inspection must yield to the members' constitutional right of privacy. (*Id*. at pp. 925-926; but see conc. opn. of Crosby, J. at pp. 927-929 [concluding damages, rather than a rejection of inspection rights, is the appropriate remedy for misapplication of corporate records].)

In *Havlicek,* the Second Appellate District, Division Six, considered whether the trial court properly denied inspection of corporate books and records by two dissident directors who were opposed to a corporation's pending merger. (*Havlicek, supra*, 39 Cal.App.4th at pp. 1848-1850.) The directors asserted an absolute right to inspect the records, but the corporation refused to permit access because it suspected the directors might use the documents to establish a competing business. (*Id*. at pp. 1849-1850.) The directors filed a lawsuit to enforce their inspection rights, which the trial court denied. (*Id*. at p. 1850.) The appellate court reversed and remanded. (*Id*. at pp. 1856-1857.) It concluded that the trial court erred in refusing to grant the directors, "at the very least, an 'inspection with just and proper conditions.' " (*Id*. at p. 1848.)

For guidance on remand, the court explained that because the right of inspection arises out of a director's fiduciary duty—a duty to act with honesty, loyalty, and good faith in the best interests of the corporation (*Berg & Berg Enterprises, LLC v. Boyle* (2009) 178 Cal.App.4th 1020, 1037)—courts may limit inspection rights when a director intends to misuse those rights to harm the corporation. (*Havlicek, supra*, at pp. 1852,

13

1855-1856.) The court offered the following hypothetical to illustrate the point: "A disgruntled director unambiguously announces his or her intention to violate his or her fiduciary duties to the corporation and the shareholders by using inspection rights to learn trade secrets, gain access to confidential customer lists, and compete with the corporation. In this situation, does the Legislature want the judiciary to come to the aid of the disgruntled director, enforce the 'absolute right' to inspect and help the director commit a tort against the corporation? No." (*Id*. at pp. 1855-1856.) Thus, the court concluded, when the evidence shows an unfettered inspection will result in a tort against the corporation, the trial court may "exercise its broad discretion under section 1603, subdivision (a) to fashion a protective order imposing just and proper conditions on the inspection." (*Id*. at p. 1856.)

In *Saline, supra*, 100 Cal.App.4th 909, the Fourth Appellate District, Division Three, followed *Havlicek* in concluding that a court may place restrictions on a director's access to corporate records when there is evidence the director intends to use the documents to commit a tort against the corporation. (*Saline*, at p. 914.) However, the court clarified that this principle should "only be applied in extreme circumstances where a preponderance of the evidence establishes the director's clear intent to use the documents to commit an egregious tort—one that cannot be easily remedied by subsequent monetary damages—against the corporation." (*Id*. at p. 915.)

The *Saline* court refused to limit the inspection rights of a director despite evidence that the director had a conflict of interest, breached fiduciary duties, breached a confidentiality agreement, and publicly defamed management, because there was no evidence to show the director intended to use the documents obtained to "disclose trade

14

secrets, compete with or otherwise harm" the corporation.[4] (*Saline, supra*, 100 Cal.App.4th at pp. 912, 914.) The court reasoned: "Only issues related to the prevention of a tort resulting from [the director's] inspection of the documents—not the entirety of his conduct as a director—are relevant to the question of whether limiting [his] access to corporate documents was appropriate." (*Id*. at p. 914.) Without evidence that the director intended to use the documents to commit a tort against the corporation, the court held it was improper to limit the director's access. (*Id*. at pp. 914-915.)

In *Tritek Telecom, Inc. v. Superior Court* (2009) 169 Cal.App.4th 1385 (*Tritek*), a different division of the Fourth District (Division One) considered a related question: whether a director's right to inspect corporate records should include attorney-client communications generated in defense of the director's own suit for damages against the corporation. (*Id*. at p. 1387.) The court decided it should not. (*Id*. at pp. 1391-1392.) In that case, a disgruntled director sought to enforce his inspection rights after suing the corporation to vindicate his individual rights as a shareholder. (*Id*. at pp. 1387-1388.) The corporation did not dispute the director's right to inspect corporate documents generally, but objected that the right of inspection should not include documents protected by the attorney-client privilege. (*Id*. at p. 1391.) The Court of Appeal agreed, concluding that a director's inspection rights may be restricted when the director intends to misuse those rights to access privileged documents that were generated in defense of a suit for damages that the director filed against the corporation. (*Id*. at pp. 1391-1392.)

Here, in ruling on Fowler's petition, the trial court followed *Saline, supra*, 100 Cal.App.4th 909, and concluded that a director's right to inspect corporate records generally may be curtailed only in "extreme circumstances" in which the corporation

---

[4] The trial court's order refused the director access to documents protected by the attorney-client privilege and work product doctrine, and the director did not challenge that condition. (*Saline, supra*, 100 Cal.App.4th at pp. 912-913.)

15

establishes by a preponderance of the evidence the director's intent to use the information to commit a tort against the corporation that cannot easily be remedied in a damages action. The trial court rejected Bancorp's claim that the mere fact Fowler was involved in litigation with the corporation should defeat his inspection rights.

Bancorp argues that the trial court interpreted the scope of a director's inspection rights too broadly. Bancorp argues that a court may deny access to corporate records whenever the director has a conflict of interest and there is a mere possibility the documents could be used to harm the corporation. We disagree.

Like the trial court, we conclude that exceptions to the general rule favoring unfettered access should only be applied in "extreme" cases where enforcing the "absolute" right of inspection would otherwise produce an absurd result. (*Saline, supra*, 100 Cal.App.4th at p. 915; *Havlicek, supra*, 39 Cal.App.4th at p. 1856.) We reach this conclusion for several reasons.

California has adopted a strong public policy favoring a broad right of access to assist directors in performing their duties in an intelligent and fully informed manner. (*Saline, supra*, 100 Cal.App.4th at p. 914; see also *Chantiles, supra*, 37 Cal.App.4th at p. 929 (conc. opn. of Crosby, J.).) The statutory scheme gives " '[e]very director . . . the absolute right . . . to inspect and copy all books, records and documents of every kind,' " and imposes no " 'proper purpose' " requirement. (*Havlicek, supra*, 39 Cal.App.4th at p. 1851; § 1602.) Because the denial of access to corporate records may operate to deny a director the ability meaningfully to participate in management, any exception to the policy of "absolute" access must be construed narrowly, limited to the most extreme cases where applying the literal meaning of the words would frustrate the manifest purpose of the law. (*Havlicek*, at pp. 1855-1856; see also *Anderson Union High School Dist. v. Shasta Secondary Home School, supra*, 4 Cal.App.5th at p. 279 [absurdity exception should be used only in extreme cases].)

16

Second, to construe the exception broadly would risk allowing the exception to swallow the rule. Differences of opinion invariably will arise among corporate directors. If a minority director can lose access to corporate records merely because the director is deemed hostile or adverse to management, the exception could remove the very protections that the "absolute right" of inspection was intended to supply. This invariably would impede inspections pursued for indisputably proper purposes, such as ascertaining the condition of corporate affairs or investigating possible mismanagement. (See, e.g., *Henshaw v. American Cement Corp.* (Del.Ch. 1969) 252 A.2d 125, 129.)

Third, applying the exception narrowly does not generally leave the corporation unprotected. If a director abuses a right of inspection to the detriment of the corporation, the corporation normally will have an adequate remedy in the form of an action against the director for breach of fiduciary duty. (*Saline, supra*, 100 Cal.App.4th at p. 916; *Chantiles, supra*, 37 Cal.App.4th at p. 929 (conc. opn. of Crosby, J.).)

We therefore agree with the Court of Appeal in *Saline* that the mere possibility that the information could be used to harm the corporation is not sufficient to defeat a director's otherwise "absolute" inspection rights. (*Saline, supra*, 100 Cal.App.4th at p. 914.) While inspection rights may be curtailed when the corporation adduces evidence that a director intends to use those rights to violate his or her fiduciary duties or otherwise commit a tort against the corporation, we are not persuaded that a director's right of inspection must be denied solely because the director has a conflict of interest or is embroiled in litigation with the corporation. Allowing a director to inspect records under such circumstances does not necessarily lead to an absurd result. To conclude otherwise would defeat the purpose of section 1602.

The cases on which Bancorp relies, *Wolf, supra*, 185 Cal.App.4th 903, and *Tritek, supra*, 169 Cal.App.4th 1385, are easily distinguishable. *Wolf* involved an inspection demand by a plaintiff who formerly served as a director of the defendant corporation. (*Wolf*, at pp. 906-907, 919.) Because the plaintiff was no longer a director, the appellate

17

court held that the plaintiff did not have standing to enforce any inspection rights.[5] (*Id.* at p. 919.) The language in *Wolf* stating that the plaintiff's threat to sue the corporation "severely undermined" his inspection rights was unsupported dictum, which we find neither compelling nor persuasive. (*Ibid.*)

Bancorp similarly points to a statement in *Tritek* suggesting that a court may limit a director's inspection rights whenever "the director's loyalties are divided and documents obtained by a director in his or her capacity as a director could be used to advance the director's personal interest in obtaining damages against the corporation." (*Tritek, supra*, 169 Cal.App.4th at p. 1391.) But Bancorp's argument takes this language out of context and ignores the holding of the case, which is that a director does not have the right to access privileged documents generated in defense of a suit for damages that the director filed against the corporation. (*Id.* at pp. 1391-1392.) In such a scenario, the director's intent to misuse the information to harm the corporation is self-evident. Therefore, consistent with the holdings in *Havlicek, supra*, 39 Cal.App.4th at pages 1855-1856, and *Saline, supra*, 100 Cal.App.4th at pages 914-915, it was proper to limit the director's inspection rights to exclude the privileged documents. There has been no similar showing here—that Fowler is seeking access to documents protected by the attorney-client privilege. Thus, *Tritek*'s holding simply does not apply under the facts of this case.

Bancorp also argues the trial court interpreted Fowler's inspection rights too broadly by requiring Bancorp to show Fowler intended to use the information to commit

---

[5]     In the course of explaining the plaintiff's lack of standing, the court in *Wolf* suggested that a director's inspection rights may be denied if the director is not "disinterested." (*Wolf, supra*, 185 Cal.App.4th at p. 919.) We find this language to be erroneous dictum to the extent it suggests a director's inspection rights may be denied based merely on the existence of a conflict of interest or adversarial relationship between the director and the corporation.

"irremediable" harm. It contends that a threatened "irremediable" tort against the corporation is merely an "example of when a director's inspection may be curtailed," and not a requirement to curtail a director's inspection rights. Bancorp argues the court should have asked only whether Fowler intended to use the information to harm the corporation.

We find it unnecessary to reach this issue because the trial court expressly found that the "preponderance of the evidence in this action does not establish Fowler's intent to commit a tort against [Bancorp,] much less one that is irremediable in damages." Thus, even under a more lenient standard, Bancorp failed to carry its burden.

In sum, this is not a case in which the director's right to inspect corporate records was alleged to conflict with constitutional or other statutory protections, as in *Chantiles, supra*, 37 Cal.App.4th 914. Nor is it a case involving access to privileged documents generated in defense of a suit for damages that the director filed against the corporation, as in *Tritek, supra*, 169 Cal.App.4th 1385. The only accusation in this case was that Fowler intended to breach his fiduciary duties in some fashion by using the records sought adversely to the corporation in the malpractice lawsuit. Under these circumstances, the trial court properly considered whether Bancorp showed by a preponderance of the evidence that a protective order was necessary to prevent Fowler from breaching his fiduciary duties or otherwise committing a tort against the corporation. (*Saline, supra*, 100 Cal.App.4th at p. 915; *Havlicek, supra*, 39 Cal.App.4th at p. 1856.)

B.      *Sufficiency of the evidence for the trial court's ruling*

We next consider the trial court's finding that Bancorp failed to make a sufficient evidentiary showing to justify restrictions in this case. This presents a question of fact. (*Saline, supra*, 100 Cal.App.4th at p. 913; *Hall v. Regents of University of California* (1996) 43 Cal.App.4th 1580, 1586; *Hartman v. Bandini Petroleum Co.* (1930) 107 Cal.App. 659, 661.)

19

Bancorp argues that it submitted significant evidence demonstrating Fowler intended to harm the corporation by using the documents to undermine the claims against him in the malpractice litigation. The trial court disagreed, finding that Bancorp failed to carry its burden. Although the court acknowledged the divergence of interests between Fowler and Bancorp with respect to the malpractice lawsuit,[6] the court was not persuaded that Fowler's inspection was motivated by an improper purpose or that he intended to breach fiduciary duties or otherwise commit a tort against the corporation.

It is not our function on appeal to reexamine whether a preponderance of the evidence supports Bancorp's position. We are bound by the fundamental appellate rule that the judgment of the lower court is presumed correct and that all intendments and presumptions will be indulged in favor of its correctness. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) The appellant has the burden to overcome that presumption and show reversible error. (*State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 610.) Where, as here, the issue on appeal turns on a failure of proof, the question for a reviewing court is whether the evidence compels a finding in favor of the appellant as a matter of law, i.e., whether the evidence was " ' "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 466; accord, *Almanor Lakeside Villas Owners Assn. v. Carson* (2016) 246 Cal.App.4th 761, 769.) Bancorp falls well short of that standard.

---

[6]     We grant Bancorp's request to take judicial notice that on September 21, 2021, Fowler filed a lawsuit against Bancorp challenging the proposed SoFi merger/acquisition, but we take notice of it only for purposes of the mootness claim, and not for purposes of judging the sufficiency of the evidence. (*California School Bds. Assn. v. State of California* (2011) 192 Cal.App.4th 770, 803; *Duronslet v. Kamps* (2012) 203 Cal.App.4th 717, 737.)

In opposing the petition, Bancorp relied primarily on evidence that Fowler (1) previously breached his fiduciary duties in connection with the BillFloat litigation; and (2) unsuccessfully sought to obtain the same corporate records as part of his discovery in the malpractice lawsuit. The first category of "evidence," consisting largely of unsupported allegations, had little persuasive value on the question whether Fowler was likely to use the requested corporate records to breach his fiduciary duties or otherwise commit a tort against the corporation. (*Saline, supra*, 100 Cal.App.4th at p. 914 [only the director's likely use of the information is relevant, not the entirety of his or her conduct as a director].)

As to the second category of evidence, Bancorp argues that it proved Fowler's intent to harm the corporation by using the information to undermine Bancorp's lawsuit. The trial court, however, found otherwise. It credited Fowler's declarations that the purpose of the inspection was related to his continuing duties as a member of Bancorp's board of directors. "[W]e must defer to the trial court's determinations of credibility." (*Harris v. Stampolis* (2016) 248 Cal.App.4th 484, 498.)

Moreover, even if we were to find that Fowler had an ulterior motive, Bancorp argued, and the trial court in the malpractice lawsuit agreed in its discovery ruling, that the documents Fowler sought were *irrelevant* to the litigation. Thus, regardless of Fowler's motives, there is no support for Bancorp's vague assertion that allowing Fowler access to the records would "severely undermine" its position in the lawsuit. (See *Victrola 89, LLC v. Jaman Properties 8 LLC* (2020) 46 Cal.App.5th 337, 357 [doctrine of judicial estoppel prohibits a party from asserting a position that is contrary to a position successfully asserted in the same or some earlier proceeding].)

On this record, we conclude the trial court did not err in finding Bancorp's evidence insufficient to curtail Fowler's "absolute" right to inspect corporate records.

DISPOSITION

Bancorp's request for judicial notice is granted. Bancorp's motion to dismiss is denied. The judgment is reversed as moot. This reversal does not imply that the judgment was erroneous on the merits, but is solely for the purpose of returning jurisdiction over the case to the trial court by vacating the otherwise final judgment solely on the ground of mootness. On remand, the trial court is directed to dismiss Fowler's claim to a director's right of inspection under section 1602 as moot. The trial court is directed to consider whether Fowler's claim to a shareholder's right of inspection under section 1600, subdivision (a) is also moot and, if not, to resolve any remaining disputes between the parties relating to that issue. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)


                                                                    KRAUSE                    , J.



We concur:



        ROBIE                    , Acting P. J.



        HULL                    , J.


22